William D. Himes v. Commissioner.Himes v. CommissionerDocket Nos. 16608, 16609.United States Tax Court1949 Tax Ct. Memo LEXIS 177; 8 T.C.M. (CCH) 515; T.C.M. (RIA) 49127; May 23, 1949*177 1. Petitioner's wife and two others contributed equally the entire capital to start the business of Alloy Rods (manufacturing welding rods), first a venture, then a corporation and finally a partnership. Petitioner's wife divided her interest among petitioner, herself, and their four children, petitioner receiving a 1/34th interest in the enterprise. Upon dissolution of the corporation in December 1940, a written partnership agreement was executed reflecting the respective interests therein. Petitioner's 1/34th share was so set forth. Held, that petitioner is taxable on 1/34th of the income of the partnership. 2. Respondent's action in using the original cost of machinery and equipment as the basis for depreciation approved in the absence of proof to the contrary. 3. Respondent's holding that payments of so-called debenture notes, resulted in income, approved for lack of proof of error. Andrew B. Young, Esq., and David P. Brown, Jr., Esq., both of Philadelphia, Pa., for the petitioner. Karl W. Windhorst, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion In Docket No. 16609 the respondent determined deficiencies of $19,234.71*178 and $59,301.46 in the petitioner's income tax liability for the years 1941 and 1943, respectively. In Docket No. 16608 he determined a deficiency of $15,046.30 in the petitioner's income tax liability for the year 1944. The issues are: 1. Is petitioner taxable on 3/17ths of the income of a partnership representing the shares held by himself, his wife, and four children, or is he taxable only on the 1/34th interest in such partnership held in his name? 2. The proper basis for depreciation of certain equipment and machinery owned by the Alloy Rods Company and acquired by it from the stockholders of Alloy Rods Corporation. 3. Were certain alleged payments of debenture notes to the stockholders of the Alloy Rods Corporation taxable as ordinary income? 4. Did the respondent erroneously charge the petitioner with renegotiation credits of $15,634.97 and $4,690.85 allowed for the years 1943 and 1944, respectively? This issue was settled at the trial by the petitioner's concession that the respondent's adjustments were correct. Findings of Fact Certain facts were stipulated. The portions thereof material to the issues here are as follows: The petitioner resides at New Oxford, *179 Pennsylvania. He filed his income tax returns for the taxable years with the collector of internal revenue for the first district of Pennsylvania. During the year 1939 the petitioner, Charles B. Wolf, and certain other individuals, became associated in an enterprise engaged in the production of welding rods and operated under the name of Alloy Rods. The following checks were drawn on York Trust Company, to the order of Alloy Rods, or to the order of Alloy Rods Corporation, as indicated below, and on the dates and in the amounts indicated: AlloyRods Cor-AlloyDateporationRodsGrace T. Himes2- 3-40$ 500Grace T. Himes2-20-40500Grace T. Himes2-25-40500Grace T. Himes3- 8-401,000Grace T. Himes3-18-40500Grace T. Himes3-26-401,000Grace T. Himes4-18-40250Grace T. Himes4-22-40$ 250Charles B. Wolf1-29-40 $500Charles B. Wolf2-26-40500Charles B. Wolf4-19-40500Oscar H. Heckert2- 1-40500Oscar H. Heckert2-16-40500Oscar H. Heckert2-26-40500Oscar H. Heckert3- 7-40500Oscar H. Heckert3- 8-401,000Oscar H. Heckert3- 8-401,000Oscar H. Heckert3-16-40500Oscar H. Heckert3-16-40500Oscar H. Heckert3-25-401,000Oscar H. Heckert3-25-401,000Oscar H. Heckert4-16-40250Oscar H. Heckert4-18-40250*180 On May 7, 1940, the assets and liabilities of Alloy Rods were as follows: AssetsCash$ 192.52Accounts receivable1,724.88Inventory6,305.30Machinery and equipment at cost6,621.40$14,844.10LiabilitiesAccounts payable$ 665.64Cash advances16,500.00$17,165.64 The difference between the amounts of $17,165.64 and $14,844.10 represents a loss from operations prior to May 7, 1940. On May 7, 1940, Alloy Rods Corporation, a Pennsylvania corporation, was organized having an authorized capital consisting of 1,000 shares of no-par value voting common stock with a stated value of $1 per share and 300 shares of six per cent preferred stock with a par value of $100 per share. (Non-voting common stock was authorized but never issued). The assets of Alloy Rods were transferred to Alloy Rods Corporation, subject to the assumption by the latter of the liabilities of the former. From the Alloy Rods Corporation's stock certificate books, it appears that its stock was originally issued as follows: Original Cer-No. ofIssued inDatetificate No.SharesDate of IssueName ofCancelled115010-8-40Oscar H. Heckert215010-8-40William D. Himes12-24-40340010-8-40Edward J. Brady12-24-40415010-8-40Charles B. Wolf12-24-40*181 Original Cer-No. ofIssued inCertificate Re-tificate No.SharesDate of IssueName ofceipted for by12510-8-40Grace T. HimesGrace T. Himes22510-8-40Oscar H. HeckertOscar H. Heckert32510-8-40Mary S. BradyEdward J. Brady4510-8-40Frances G. WolfCharles B. Wolf5510-8-40Frances J. WolfCharles B. Wolf(now McCabe)6510-8-40Jessie C. WolfCharles B. Wolf7510-8-40Mary Julia WolfCharles B. Wolf8510-8-40Charles S. WolfCharles B. Wolf100Alloy Rods Corporation set up the assets and liabilities on its books to indicate: AssetsCash$ 192.52Accounts receivable1,724.88Inventory6,305.30Equipment - at appreciated value (costto transferors $6,621.40)28,825.00$37,047.70LiabilitiesAccounts payable$ 665.64Debentures16,500.00Preferred stock10,000.00Common stock850.00Paid in surplus9,032.06$37,047.70After the cashing of the following checks drawn on York Trust Company to the payees below indicated, and by the persons and in the amounts indicated, an additional amount of $3,000 was credited by Alloy Rods*182 Corporation to the account "Debentures": Payee -Payee - C.B.PayeeAlloy RodsWolf forDateAlloy RodsCorporationAlloy RodsGrace T. Himes5- 8-40 $500Grace T. Himes6-26-40500Charles B. Wolf6-28-40 $500O. H. Heckert5- 8-40 $500O. H. Heckert6- 6-40500Note: The above entries total $2,500. A payment of $500 made on May 17, 1940, evidently was omitted. The total amount of the "Debentures" account as of December 31, 1940, appears as $19,500. After cashing the following checks, drawn on York Trust Company to the order of Alloy Rods Corporation, or to Alloy Rods, by the individuals in the amounts and on the dates indicated, the amount of $30,000 was credited to the account "Notes Payable": Alloy RodsDateAlloy RodsCorporationO. H. Heckert10-10-40$ 4,975O. H. Heckert10-11-401,990Grace T. Himes10-12-40$5,965Grace T. Himes10-14-401,000O. H. Heckert12-26-4010,000Kate W. Himes, by W. D. Himes,Attorney12-31-406,000Kate W. Himes was the mother of the petitioner, William D. Himes. It appears from the records of Alloy Rods*183 Corporation that additional shares of the unissued preferred stock were issued on December 24, 1940, as follows: Checks to OrderChecks toOriginalNo.of Alloy RodsOrder ofCertificateCertificateofIssued inCorporationAlloy RodsReceiptedNo.Shs.Name ofDrawn byDrawn byfor by935IsabelHeckertOscar H. HeckertOscar H. Heckert$2,0001,5001010Catherine H.MillerWilliam D. HimesWilliam D. Himes $7501110Elizabeth H.William D. HimesWinebrenner1210WilliamHimesGrace T. HimesWilliam D. Himes$2,750135Laurence T.HimesWilliam D. Himes1410Charles B.WolfCharles B. WolfCharles B. Wolf$1,0002,500155Frances G.WolfCharles B. Wolf165Frances J.WolfCharles B. Wolf175Charles S.WolfCharles B. Wolf185Jessie C.WolfCharles B. Wolf195Mary JuliaWolfCharles B. Wolf2095Mary S.BradyEdward J. Brady Isabel Heckert is the wife of Oscar H. Heckert. Catherine H. Miller and Elizabeth H. Winebrenner*184 are the daughters of William D. Himes, and William Himes and Laurence T. Himes are his sons. Frances G. Wolf is the wife of Charles B. Wolf, Charles S. Wolf is his son, and Frances Jane Wolf (now McCabe), Jessie C. Wolf and Mary J. Wolf are his daughters. Mary S. Brady is the wife of Edward J. Brady. It appears from the records of Alloy Rods Corporation that on December 24, 1940, the following cancellations and reissues of its common stock certificates occurred: Certifi-CateNo.NewNo.NewNo. Can-ofCertifi-ofIssued inCertificatecelledShs.cate No.Shs.Name ofReceipted for byOscar H.NoHeckertchangeNo changeWilliam D. Himes21505100William D. HimesWilliam D. Himes610Grace T. HimesWilliam D. Himes710Catherine H. MillerWilliam D. Himes810Elizabeth H. WinebrennerWilliam D. Himes910William HimesWilliam D. Himes1010Laurence T. HimesWilliam D. HimesWilliam D. Himes51001115Grace T. HimesNo receipt signed1215Catherine H. MillerNo receipt signed1315Elizabeth H.WinebrennerNo receipt signed1415William HimesNo receipt signed1515Laurence T. HimesNo receipt signed1625William D. HimesNo receipt signedEdward J. Brady340017200Edward J. BradyNo receipt signed18200Mary S. BradyNo receipt signedCharles B. Wolf41501950Charles B. WolfNo receipt signed2050Frances G. WolfNo receipt signed2150Frances Jane Wolf(now McCabe)No receipt signed*185 On December 31, 1940, the assets and liabilities of Alloy Rods Corporation, as entered in its books, were as follows: AssetsCash$ 83.87Accounts receivable53,030.21Inventory29,338.34Machinery and equipment28,544.00(net of depreciation including"equipment write-up" of$22,203.60)$110,996.42LiabilitiesAccounts payable$ 18,430.43Notes payable30,000.00Debenture notes19,500.00Capital stock: Preferred30,000.00Common850.00Paid in Surplus9,032.06Earned Surplus3,183.93$110,996.42 The machinery and equipment consisted of machinery having a cost to its transferors of $6,621.40, but carried on the corporation's books at an appreciated value, as of December 31, 1940, plus machinery purchased in September, 1940, for cash of $2,890.55. Depreciation of $3,171.55 on all such machinery to December 31, 1940, was claimed by the corporation, but only $537.77 of that amount was allowed by the respondent computed on the equipment at cost. On December 31, 1940, Alloy Rods Corporation distributed its assets, in kind, to its common stockholders, of record, in liquidation, subject to its liabilities. The respondent computed*186 a gain on liquidation of Alloy Rods Corporation with respect to its common stock by determining the assets and liabilities to be as follows: AssetsCash$ 83.87Accounts receivable53,030.21Inventories29,338.34Equipment$ 9,511.95Less: Depreciation1,488.978,022.98Good will50,000.00Total Assets$140,475.40LiabilitiesAccounts payable$18,430.43Notes payable30,000.00Debenture notes19,500.00Accrued taxes1,468.86Preferred stock30,000.0099,399.29Net worth41,076.11Cost basis of 850 shares of com-mon stock4,178.46Gain on liquidation$36,897.65The respondent determined the total cost of the common stock of Alloy Rods Corporation, on the date of incorporation, May 7, 1940, to be $4,178.46, based on the cost value of assets of $14,844.10, less accounts payable of $665.64, as of that date, and less $10,000 of such value attributed to the 100 shares of the preferred stock issued by it on organization. He further determined that the distribution of assets on liquidation, valued at $41,076.11, resulted in a gain on each share of common stock equal to $43,4090, being the difference between the*187 cost of $4.9158 ($4,178.46) / 850 per share, and liquidating value of $48.3248 ($41,076.11) / 850 per share. Taxes were assessed against and paid by the petitioner, William D. Himes, and Charles B. Wolf upon the gain attributable by the respondent to the liquidation, which gain was computed on their holdings of record of 25 and 50 shares of common stock, respectively, in accordance with the respondent's aforesaid computation. On December 27, 1940, each of the common stockholders of record of Alloy Rods Corporation, entered into an agreement designated as "Articles of Partnership." The agreement provided that the partnership should engage in designing, manufacturing, fabricating, repairing and dealing in all kinds of alloys, welding rods, etc., and in exercising many activities incidental thereto. It limited the term of the partnership to five years and provided for the contribution of non-interest bearing capital, payable in cash or property, in the following proportions: by Edward J. Brady and Mary Shodron Brady, 4/17ths each; by Charles B. Wolf, Frances gg. w/olf and Frances Jane Wolf, 1/17th each; by Catherine H. Miller, Elizabeth H. Winebrenner, William Himes, Laurence T. Himes, *188 Grace T. Himes, and William D. Himes, 1/34th each; and by O. H. Heckert, 3/17ths thereof. The agreement further provided that any payments made by a partner to the partnership or an indebtedness incurred by a partner to it should bear interest and could be made only with the consent of a majority in interest. The partners agreed to aid in the partnership business and not to compete with it. Adequate books and records were to be kept. The salary of Edward J. Brady was fixed at $5,000 per annum. Wolf, Himes, and Heckert were to receive $100 per month and Brady an additional salary of the same amount. Profits credited to the several accounts of the partners could be withdrawn simultaneously by them in proportion to their partnership interests and upon the determination of a majority in interest. At the termination of the partnership, the net assets were to be divided in like proportion. A partner could transfer his share, or a part thereof, to another partner. In the event of the death of a partner, his personal representative had the right to continue as a partner. Other unimportant details were included in the agreement. The assets received by Alloy Rods Company, together with*189 the liabilities assumed by it, which were the same assets and liabilities of Alloy Rods Corporation referred to heretofore were set up on the partnership books as follows: AssetsCash$ 83.87Accounts receivable53,030.21Inventory29,338.34Machinery and equipment28,544.00$110,996.42LiabilitiesAccounts payable$ 18,430.43Notes payable49,500.00Contracts payable30,000.00Accrued taxes894.97Partner's capital12,171.02$110,996.42The account "Notes Payable", assumed as a liability by Alloy Rods Company, included the loans to the corporation of $30,000 referred to heretofore, plus the amount of $19,500 appearing in the corporation's account "Debentures" heretofore mentioned. The account "Contracts Payable" represented the entire amount of $30,000 authorized, issued, and outstanding preferred stock of Alloy Rods Corporation. On December 27, 1941, checks were drawn by Alloy Rods Company on York Trust Company to the following named individuals in the amounts indicated: William D. Himes$6,500Oscar H. Heckert6,500Charles B. Wolf6,500 and thereupon the "Notes Payable" account was debited by Alloy Rods Company*190 in the amount of $19,500. This item of $19,500 is the same as that hereinabove mentioned. On January 5, 1942, the following checks were drawn on York Trust Company to the order of Alloy Rods Company by the following individuals in the amounts indicated: William D. Himes$6,500Oscar H. Heckert6,500Charles B. Wolf6,500 and thereupon the "Notes Payable" account was credited by Alloy Rods Company in the amount of $19,500. In computing the amount of taxable net income of Alloy Rods Company for the taxable years involved in these proceedings, the respondent allowed salaries as provided in the "Articles of Partnership." In examining the partnership returns of income of Alloy Rods Company for its fiscal period January 1 to September 30, 1941; its fiscal years ended September 30, 1942 and 1943, and its fiscal period October 1, 1943 to January 31, 1944, the respondent also determined that the original machinery and equipment, acquired by Alloy Rods Corporation upon its organization, and which were included in the assets transferred to Alloy Rods Company, had a basis for depreciation equal to its cost of $6,621.40 depreciated to the date of liquidation. Partly*191 by reason of the adjustment just mentioned, the respondent, in computing the net income of Alloy Rods Company, disallowed the following amounts of depreciation and obsolescence and increased the net income of Alloy Rods Company accordingly, as set forth below: PeriodPeriod1-1-41 toFiscal YearFiscal Year10-10-43 to9-30-41194219431-31-44Depreciation disallowed$1,114.61$1,703.22$1,565.00$602.06Obsolescence disallowed2,000.00The respondent has further determined that Alloy Rods Company did not constitute a bona fide partnership for tax purposes and that the net income of Alloy Rods Company for the taxable years involved in these proceedings is taxable to the individuals and in the ratios as set forth below: Edward J. Brady8/17William D. Himes3/17Oscar H. Heckert3/17Charles B. Wolf3/17On April 28, 1941, Alloy Rods Company filed with the Prothonotary's Office of York County, Pennsylvania, a certificate of registry in accordance with the "Fictitious Name" statute of Pennsylvania. The "Accrued Interest" account of Alloy Rods Corporation shows debits and credits as follows: DebitsDateAmount12-27-40$162.5012-27-40162.5012-27-40162.5012-31-4054.1612-31-4054.1712-31-4054.17Credits10-31-40$487.5012-31-40162.50*192 The "Interest" account of Alloy Rods Corporation shows debits and credits as follows: DebitsDateAmount7-31-40$ 13.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.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.3110-10-4070.0010-31-40487.5010-31-4014.0611-30-40120.0012-31-40162.5012-31-4088.33Credits9-19-40$ 9.9112-31-40 P and L1,013.27The following entries appear in the journal book of Alloy Rods Corporation: Dr.Cr.October 31, 1940 Interest$487.50Interest accrued$487.50Interest due on notes of $19,500 at 5% May 1to November 1, 1940.December 31, 1940 Interest$162.50Interest Accrued$162.50Interest due on notes of $19,500 at 5% No-vember 1 to December 31, 1940.The following entries appear in the cash disbursements book of Alloy Rods Corporation: December 27, 1940W. D. Himes$162.50O. H. Heckert162.50Charles B. Wolf162.50December 31, 1940Wm. D. Himes54.16O. H. Heckert54.17Charles B. Wolf54.17The record discloses the following additional facts: During the years 1939 and 1940 the petitioner was vice president of the York Trust Company; director and, for a part of the time, chairman*193 of the board of the American Insulator and New Freedom Manufacturing Company; president and director of the Peerless Equipment Company; director of another bank; director of the Reed Machinery Company, and a trustee of the estate of his wife's grandfather. The petitioner performed the duties of these positions simultaneously, although his duties as vice president of the York Trust Company demanded most of his time. For the purposes of clarity, the original venture (to May 7, 1940) sometimes is designated as Alloy Rods, the Alloy Rods Corporation as the corporation and Alloy Rods Company, the partnership, as the company. Edward Brady, heretofore mentioned, is a welding engineer. He has been engaged in that profession for about 16 years. Theretofore, he was in the foundry business. He studied engineering at the University of Illinois and the Armour Institute in Chicago. He came to York, Pennsylvania, on January 1, 1939, to take charge of the stainless welding electrode department of the Mackay Company. About September 1, 1939, he stated to Charles B. Wolf that if he had sufficient funds he could make a large amount of money. Wolf, Heckert and petitioner then discussed with Brady*194 his proposed project to manufacture welding rods. The petitioner stated to Heckert that Mrs. Himes would put in the money as her investment in the venture. Brady contributed to the enterprise his knowledge and experience but no capital. The capital was furnished by the Himes, Wolf and Heckert interests. From the first, the petitioner and his wife discussed the nature of the enterprise and she agreed to invest her money in it. The petitioner did not have the ready cash at the time. He explained the risks of the business to her. Thereafter she voluntarily contributed her own money. The petitioner never promised to repay nor did he ever repay to his wife any part of her investment so made. During the entire inception and the continuation of the business, Hekert knew of the status of Mrs. Himes as investor, stockholder and partner. Her personal estate amounted to from $75,000 to $100,000 and her investment in the company came from her own resources. She had her own individual bank account and never had a joint account with the petitioner. Mrs. Himes' capital investments in the business were not made as loans or gifts to the petitioner. At first the business of Alloy Rods was very loosely*195 and informally conducted. Mrs. Himes lived 20 miles away from the scene of the operation. Consequently, Heckert, Wolf and Mrs. Himes agreed that Heckert and Wolf would advance money needed to start the business and that Mrs. Himes would reimburse them for her share thereof. The petitioner also supplied money for advances required from his wife and was always reimbursed by her. The venture was based on Brady's training and knowledge of the art of electric welding and the acquisition of plant and equipment by the other joint venturers, who agreed that if payments were made by one he would be reimbursed by the others in proportion to their shares. Such reimbursement procedure was carried out to cover the purchase of the machinery needed for the operation. Prior to May 7, 1940, the cash paid in to Alloy Rods by Grace T. Himes, Charles B. Wolf and Oscar H. Heckert totaled $4,500, $1,500 and $7,500, respectively. In September, 1939, machinery for Alloy Rods was purchased by Heckert at a cost of $1,550; in June, 1940, Wolf bought other machinery costing $1,300 and in September, 1939, Heckert paid Brady $150 for his expenses incident to such purchases. These amounts, aggregating $3,000, *196 were added to the investment of $13,500, above described, and resulted in an initial capital investment of $5,500 each made by Mrs. Himes, Wolf and Heckert. They were equalized by mutual reimbursements (including a payment of $1,000 made by the petitioner as agent of and for the benefit of his wife and later repaid to him by her). No other capital investments, except the $3,000 heretofore mentioned as credited to the account "Debentures" on the books of the corporation, were contributed by anyone to the enterprise. The organization of Alloy Rods Corporation as above discussed was effected in order to continue the business of Alloy Rods and to limit personal liability. The stock of the corporation was issued, as above set forth, in proportion to the respective investment interests of the Heckert, Himes and Wolf families and the amount allocated to Brady for his services. The sum of $16,500, increased to $19,500 by additional contributions to capital made in May and June 1940 ($1,000 each by Grace T. Hines, Heckert and the Wolf family), was variously described as debentures, cash payments, notes payable, debenture notes, etc., and represented and was considered to be the permanent*197 capital of the corporation. The notes were issued pursuant to a suggestion made by Heckert, in order to protect those who had invested money in case the enterprise were unsuccessful and the corporation were forced to liquidate. Brady contributed only his skill and services but received almost half the stock. The stockholders felt, therefore, that his interests, upon liquidation, should be subordinate to that of the other stockholders. The capital of the Himes, Wolf and Heckert interests was also represented by 850 shares of common stock and 100 shares of preferred stock of the corporation. From the beginning, Grace T. Himes and the petitioner had numerous discussions relating to her transferring a portion of her interest in the business to their children. She also felt that the petitioner should receive an interest therein. When it appeared that the venture would be profitable, such transfers were made by Mrs. Himes. The stocks and notes belonging to her were issued in the name of the petitioner to facilitate the management of her interests in the corporation. The petitioner had always managed the financial affairs of the family. Mrs. Himes repaid all advances made by the petitioner*198 for her. He often advanced money for his wife to hasten the payment of the business obligations of the enterprise and was always reimbursed therefor by her. Distributions made to the Himes children were duly deposited in each separate bank account, subject to withdrawal by the depositor only. The aggregate amount of their net personal estates was from $40,000 to $50,000 which had accumulated largely from gifts from their grandparents. During 1940 Heckert and Mrs. Himes were called upon to pledge their personal assets to provide credit for the corporation. The corporation was required to give surety bonds to cover government orders. The corporation's financial statement was not strong enough to warrant the issuance of the bonds. Consequently, Heckert and Mrs. Himes hypothecated securities to secure the bonds. Heckert and the petitioner also deposited $20,000 in securities in order to obtain a surety bond required by the Navy Department. The Crucible Steel Company was skeptical of the corporation's credit and hence required a deposit of $5,000 in cash to guarantee the payment for goods furnished to the corporation. Heckert deposited the entire amount and several days later Mrs. *199 Himes reimbursed him for her share thereof. A representative of Crucible Steel made a thorough investigation of the financial responsibility of all persons holding interests in the corporation, including the children of the Himes and Wolf families. The Wolf and Brady interests did not add their credit to meet the demands for collateral security made by the corporation's suppliers and customers. In view of the credit status of the corporation, the requirement for personal guarantee (supplied by only a part of the stockholders) and the enactment of the Federal corporation excess profits tax statute in 1940 the stockholders deemed it advisable to liquidate the corporation as of December 31, 1940. Thereupon, on that date the corporation distributed its assets in kind, subject to its liabilities, to its common stockholders in proportion to their stockholdings, in complete liquidation, as above stated. On December 27, 1940, the signators to the Articles of Partnership were all over 21 years of age. Grace T. Himes contributed no personal services to Alloy Rods, to the corporation, or to the company, but she discussed business procedure and policies with her associates during the operation*200 of the company and its predecessors. The petitioner maintained his home with funds from sources not originating from the operation of Alloy Rods, the corporation, or the company. He has used no income directly or indirectly paid to his wife or children by the venture, the corporation, or the partnership. The checks of the company for $6,500 each, dated December 27, 1941, payable to petitioner, Heckert and Wolf, respectively, were issued in order to avoid taxability under the Pennsylvania corporate loans and personal property tax statutes which imposed a tax of four mills on loans. The repayment of the same respective amounts on January 5, 1942, was made for the purpose of restoring the status quo ante and continuing the $19,500 as permanent capital of the partnership. The partnership issued financial statements, usually monthly, which the petitioner showed and explained to his wife and daughters, both of his sons being in military service. The partnership, known as Alloy Rods Company, was a bona fide, real and valid partnership and the income from only the petitioner's 1/34th share therein is taxable to him. The Commissioner added to the petitioner's income for the year 1941*201 the sum of $5,500 as "Liquidation of Notes" with the following comment: "The debenture notes in the amount of $5,500.00 held by you in the predecessor Alloy Rods Corporation, which debenture notes were assumed as 'notes payable' by the alleged partnership of Alloy Rods Company, had no cost basis in your hands. Therefore, the total amount of $5,500.00 paid to you by Alloy Rods Company in the year 1941, in liquidation of the foregoing 'notes payable,' is includible in your taxable income for the year 1941." Opinion VAN FOSSAN, Judge: Although the stipulated facts are voluminous and seen at first reading to be somewhat confused, the basic issue is simple - was petitioner taxable on 3/17ths of the income earned by the partnership in which petitioner, his wife and four adult children were purportedly all members, each owning 1/34th share, or was he the owner of but 1/34th of such income? Stated otherwise, the issue is, - did petitioner's wife make the original, and so far as her family was concerned, the sole investment in the enterprise on her own behalf and with her own separate funds? The record establishes clearly that albeit petitioner advanced funds to invest in Alloy Rods, *202 he did it on behalf of his wife, who immediately reimbursed him in full. Likewise, when the corporation was organized, purely as a matter of convenience, the stock which represented the wife's investment was originally issued in October 1940 in petitioner's name. In this also he was acting entirely as his wife's agent and in December, after Mrs. Himes made gifts to her husband and four adult children of 1/6th of her interest to each, the stock was reissued in the respective names. In the liquidation which followed, the assets were distributed to all stockholders of record and petitioner paid a tax on the gain attributed by respondent to his 25 shares (1/34th) interest. In the partnership which was then created each former stockholder contributed his share of the assets and each of the Himes family received a 1/34th interest in the partnership. At all times, pursuant to a long established practice, petitioner represented his wife as her agent. Since the total original investment was made by petitioner's wife from her own funds and on her own behalf, and since petitioner and the adult children received their interests in the partnership through petitioner's wife, it is clear that*203 petitioner was not taxable on the income paid to his wife and children. Petitioner owned a 1/34th interest in the partnership and was taxable only on such share. This holding is dispositive of the question of the taxability of the partnership income to petitioner and it is unnecessary to rule on the question of the validity of the partnership as such. In the second issue we are asked to determine the proper basis for depreciation of equipment and machinery owned by the corporation, acquired from it by the stockholders on liquidation and transferred by them to the company on the formation of the partnership. Respondent used the original cost of the machinery as the unadjusted basis. The petitioner claims the fair market value of the property, purchased at a cost of $6,621.40, to have been $28,825 on December 31, 1940. The larger figure was based on the replacement cost of new machinery on May 7, 1940. In the alternative, the petitioner asks a value of $14,125 representing the alleged replacement value of used machinery on May 7, 1940. The petitioner presented Brady as a witness to the fair market value of the equipment and machinery on May 7, 1940, the date of acquisition by the*204 corporation. The respondent challenges his competency as an expert appraiser and argues that values founded on his own personal opinion were "guess work." It is at once apparent that the cost of new machinery is not a proper basis for determining fair market value. It is also clear that the petitioner produced no testimony as to the fair market value of the machinery on December 31, 1940, the critical date. Brady testified that he purchased the machinery between September 9, 1939, and January 1, 1940, and that no reappraisal was made as of December 31, 1940. Assuming that the property had the same value on May 7, 1940, as on January 1, 1940, it does not follow that the same value persisted to December 31, 1940. The petitioner's failure to show the fair market value on December 31, 1940, is fatal to his contention. Much could have happened to the equipment between May 7, 1940, and December 31, 1940. Therefore, the respondent's action in using the original cost figure of $6,621.40 as the basis of depreciation is approved. In the third issue the petitioner contends that the contributions made by Grace T. Himes, Heckert and the Wolf interests constituted a capital investment in the*205 venture and carried through the corporation to the partnership, the form in which the business is now being operated, and that the $16,500 alleged to have been "paid" in 1941 was merely a transfer of vouchers in order to avoid the payment of the Pennsylvania personal property tax on corporate "loans." Obviously, if the funds represented capital and the notes were mere security, as contended by petitioner, there would be no purpose in the maneuver by which the partnership attempted to dodge the Pennsylvania personal property tax. The book entries of the corporation are inconsistent with the petitioner's contention and he has not satisfactorily demonstrated either in the record or on brief that respondent erred in taxing the payments. Decision will be entered under Rule 50.